Tod HALL *v.* PULASKI COUNTY CHANCERY COURT,
Seventh Division, Honorable Rita Gruber, Presiding

95-80                                   898 S.W.2d 46

Supreme Court of Arkansas
Opinion delivered May 22, 1995

*Melinda R. Gilbert, P.A.*, for appellant.

*Randell Templeton*, for appellee.

ROBERT L. BROWN, Justice. Petitioner Tod Hall seeks a writ of prohibition against the Pulaski County Chancery Court, Juve-

nile Division, to deter it from proceeding with a paternity suit. The writ is denied.

On June 13, 1988, Doug Freeman was granted a divorce from Jamie Freeman, now Jamie McFall, in Pulaski County Chancery Court on grounds of general indignities. The decree referred to one child of the marriage, S.F., age ten months. Custody of S.F. was placed in Jamie McFall. Doug Freeman was to pay child support, and he was given visitation rights. On March 2, 1994, Doug Freeman filed a paternity complaint against Jamie McFall[1] and his nephew, Tod Hall, in Pulaski County Chancery Court, Juvenile Division, and alleged that Hall was the putative father of S.F. He prayed that the court order blood testing of all parties, including S.F., and that if Hall was determined to be the father, he be relieved of all child support obligations.

On April 8, 1994, Hall moved to dismiss the paternity suit and gave as his reasons (1) any determination of paternity should be made in chancery court; (2) paternity was decided by the 1988 divorce decree and is *res judicata*; and (3) Doug Freeman has no standing to seek a paternity determination because he is not a "putative father." Jamie McFall agreed that there was a high probability that Hall was S.F.'s father and agreed to the blood tests.

On June 24, 1994, Hall moved for summary judgment on essentially the same grounds as those raised in his motion to dismiss. The chancery court, juvenile division, ordered that the 1988 divorce matter in chancery court be consolidated with the paternity suit. The court further ordered that a guardian ad litem be appointed for S.F. Hall next filed various motions seeking clarification and renewing his motion to dismiss on grounds of lack of subject matter jurisdiction. On January 25, 1995, the juvenile court issued a letter opinion denying the motion to dismiss and directing blood tests "as soon as possible." Hall's petition for writ of prohibition followed.

The Arkansas General Assembly may vest jurisdiction in separate courts of chancery. Ark. Const. art. 7, § 1. In 1989, the General Assembly passed four acts which apply to paternity juris-

---

[1]The paternity suit designates her as "Jamie Freeman."

diction. Those four acts are now codified, and the relevant part of each is set forth:

> (a) The juvenile court shall have exclusive original jurisdiction of and shall be the sole court for the following proceedings governed by this subchapter:
>
> . . . .
>
> (3) Proceedings for establishment of paternity . . . of a juvenile alleged to be illegitimate.

Ark. Code Ann. § 9-27-306(a)(3) (Repl. 1993).

> The juvenile division of the chancery court shall be a trial court with original and exclusive jurisdiction in the counties in which it sits, of . . . bastardy . . . and such other juvenile matters as may be provided by law.

Ark. Code Ann. § 16-13-603(a)(1) (Repl. 1994).

> (a)(1) The chancery court shall have concurrent jurisdiction with the juvenile division of chancery court in cases and matters relating to paternity.
>
> (2) The chancery court shall have exclusive jurisdiction of paternity matters which arise during pendency of original proceedings brought under equity jurisdiction.
>
> (3) The juvenile division of chancery court shall have exclusive jurisdiction of paternity matters which arise during pendency of original proceedings brought pursuant to Arkansas Juvenile Code of 1989, § 9-27-301 et seq.

Ark. Code Ann. § 9-10-101(a) (Repl. 1993).

> (b) Notwithstanding the provisions of the Arkansas Juvenile Code of 1989, § 9-27-301 et seq., or any other enactment which might be interpreted otherwise, the chancery court or any division of chancery court shall have jurisdiction for all cases and matters relating to paternity.

Ark. Code Ann. § 16-13-304(b) (Repl. 1994).

The parties have premised their respective arguments on these statutes. Doug Freeman contends that he has alleged ille-

gitimacy with respect to S.F., which confers exclusive jurisdiction in chancery court, juvenile division, under § 9-27-306(a)(3). Hall contends, on the other hand, that the original divorce in chancery court is ongoing and that exclusive jurisdiction over paternity rests in that jurisdiction under § 9-10-101(a)(2).

This court faced a similar dilemma in the case of *Barnes* v. *Barnes*, 311 Ark. 287, 843 S.W.2d 835 (1992). In *Barnes*, Billy Joe Barnes and Anna Barnes (Hicks) were divorced in January 1989. Hicks testified that she and Barnes had sexual intercourse in December 1989. In January 1991, she filed a paternity suit, claiming that Barnes was the father of her child born in September 1990. Barnes claimed that the juvenile division of chancery court lacked subject matter jurisdiction. We disagreed and noted that exclusive jurisdiction in chancery court lies under the statute "when a paternity matter arises during the pendency of an action already within its jurisdiction." 311 Ark. at 292, 843 S.W.2d at 837. We further emphasized that concurrent jurisdiction lay in both chancery and juvenile courts under §§ 9-10-101(a)(1) and 16-13-304(b) and decided that jurisdiction was appropriate in chancery court, juvenile division.

The case before us is somewhat different from *Barnes* v. *Barnes* but analogous. Here, based on what we have before us, the paternity issue did not *arise* during the original 1988 divorce action, and that is what § 9-10-101(a)(2) requires for exclusive jurisdiction to reside in chancery court. To be sure, there was some proof in the paternity suit that Doug Freeman suspected Tod Hall was the father of S.F. prior to the divorce, but, according to the record, that issue was not raised in chancery court by either Doug Freeman or Jamie McFall or developed in that action in any way. The divorce was concluded in 1988, though the court did retain jurisdiction to modify and enforce the rights of the parties. Under these facts, there are insufficient grounds for finding exclusive jurisdiction in chancery court. Moreover, there is no question but that sections 9-10-101(a)(1) and 16-13-304(b) evince a strong preference by the General Assembly for concurrent jurisdiction in chancery court and in chancery court, juvenile division, over paternity matters. And, finally, Doug Freeman alleges in the paternity suit that S.F. may have been the offspring of a relationship out of wedlock which would confer jurisdiction in chancery court, juvenile division, under

§ 9-27-306(a)(3). We conclude that jurisdiction appropriately lies in chancery court, juvenile division.

Hall vigorously asserts that the divorce matter decided S.F.'s paternity in 1988 and that this is *res judicata* or collateral estoppel. *Res judicata* and collateral estoppel are affirmative defenses to be pursued by Hall in chancery court, juvenile division, but not reasons for denying subject matter jurisdiction in that court. *See Tucker Enterprises, Inc.* v. *Hartje*, 278 Ark. 320, 650 S.W.2d 559 (1983).

Because we cannot say that chancery court, juvenile division, is wholly without jurisdiction over this matter, the petition is denied. *See West Memphis Sch. Dist. No. 4* v. *Circuit Court*, 316 Ark. 290, 871 S.W.2d 368 (1994).

Writ denied.