STATE of Arkansas *v.* PULASKI COUNTY CIRCUIT COURT

96-1286 934 S.W.2d 915

Supreme Court of Arkansas
Opinion delivered December 16, 1996
[Petition for rehearing granted February 10, 1997.*]

---

* Corbin, Brown, and Thornton, JJ., would deny.

*Winston Bryant*, Att'y Gen., by: *Kelly K. Hill*, Deputy Att'y Gen., for petitioner.

*James, Yeatman & Carter, PLC*, by: *Paul J. James* and *Steve W. Haralson*, for respondent.

ROBERT L. BROWN, Justice. On October 25, 1996, the State of Arkansas filed its petition for a writ of prohibition or, alternatively, for a writ of certiorari and prayed that this court vacate the Pulaski County Circuit Court's order reducing bail for David Bernard Batts from $25,000 to $7,500. We deny the petition.

On July 16, 1996, Officer Charles Jones of the Sherwood Police Department arrested David Bernard Batts, age 16, for the unlawful discharge of a firearm, which is a Class B felony. *See* Ark. Code Ann. § 5-74-107(b)(1), (2) (Repl. 1993). Officer Jones issued a complaint against Batts for the offense by completing an Arkansas Uniform Traffic Ticket and Complaint form in which he stated that he had reasonable grounds to believe the offense was committed. Batts was booked in the Sherwood City Jail, and bail was fixed at $50,000.

The following day, Batts appeared with a deputy public defender in Sherwood Municipal Court, presumably for a reasonable-cause hearing on whether Batts committed the offense. *See* Ark. R. Crim. P. 4.1(e). The municipal court apparently found reasonable cause and, therefore, cause to detain Batts under Ark. R. Crim. P. 8.3(c), though the record before this court is void of any information concerning a hearing. The municipal court records do reflect

that bail was set at $25,000, and the matter was bound over to Pulaski County Circuit Court. Batts was transferred to the Pulaski County Jail.

On September 17, 1996, Pulaski County Circuit Judge Marion Humphrey held a hearing on the Batts matter, after first notifying the prosecuting attorney. The catalyst for the hearing was a meeting that Judge Humphrey had with Batts's parents the previous day where they complained to the judge that Batts should be in school and not in jail. Batts had been in jail continuously since his arrest on July 16, 1996. The prosecuting attorney had filed no formal felony charges against him.

At the September 17, 1996 hearing, the deputy prosecutor explained that the State's case against Batts would be that he shot at another car while traveling on the Jacksonville/Sherwood highway and struck a postal truck that was following behind the car he was trying to hit. A dispute at a roller skating rink led to the shooting. The prosecutor further informed the court that his office had received the Batts file on August 19, 1996, but had not yet made a decision to file formal charges against him as an adult. The deputy prosecutor stated:

> It hasn't gone to the first attorney for a file decision. And we try and get all of our file decisions out within a month and we're right on the outside of that right now. As the Court knows, some things [are] slowed down because of the turnover in the circuit clerk's office.

The deputy prosecutor further advised the circuit court that Batts had been given his *Miranda* rights at the Sherwood Police Department and had admitted to the shooting. He further told the court that the prosecutor would be charging Batts as an adult and that "there will probably be two counts of unlawful discharge and probably one terroristic act for hitting the mail truck that was occupied by a postal worker."

The deputy prosecutor then objected to the bond hearing because charges had not been filed in circuit court. The court admonished the prosecutor to "move these [cases] along", and the court reduced the bail to $7,500. It is that action by the circuit

court that the State seeks to vacate with its petition.[1]

## I. Prohibition

■ We first consider whether a petition for a writ of prohibition is the appropriate remedy. We conclude that it is not. A writ of prohibition is only appropriate when the acting court is wholly without jurisdiction. *Steve Standridge Ins., Inc.* v. *Langston,* 321 Ark. 331, 900 S.W.2d 955 (1995); *Hall* v. *Pulaski County Circuit Court,* 320 Ark. 593, 898 S.W.2d 46 (1995). Moreover, a writ of prohibition must be clearly warranted. *Archer* v. *Benton County Circuit Court,* 316 Ark. 477, 872 S.W.2d 397 (1994); *Leach* v. *State,* 303 Ark. 309, 796 S.W.2d 837 (1990). A writ of prohibition is not directed to the jurisdiction of an individual judge but to the court itself. *Lee* v. *McNeil,* 308 Ark. 114, 823 S.W.2d 837 (1992).

■ The Arkansas Constitution provides that the circuit courts of this state have superintending control over municipal courts. Ark. Const. art. 7, § 14. *See also* Ark. Code Ann. §§ 16-13-203 and 16-13-204 (Repl. 1994). The circuit courts also have exclusive jurisdiction over felony charges. Ark. Const. art. 7, § 11; *State* v. *Pulaski County Circuit-Chancery Court,* 316 Ark. 473, 872 S.W.2d 854 (1994). Our criminal rules further contemplate that a second "judicial officer" may reduce the bail bond set by an original judicial officer. Ark. R. Crim. P. 9.2(e)(i). Surely, a superintending circuit judge qualifies as a judicial officer for purposes of the rule governing bail. We hold, accordingly, that the essential prerequisite for a writ of prohibition is lacking in this matter because the Pulaski County Circuit Court does not wholly lack subject-matter jurisdiction.

## II. Certiorari

■ We turn then to the alternative remedy requested, which is certiorari. Writs of certiorari have been labeled the appropriate vehicle for relief in bail proceedings. *See, e.g., Casement* v. *State,* 318 Ark. 225, 884 S.W.2d 593 (1994); *Foreman* v. *State,* 317 Ark. 146, 875 S.W.2d 853 (1994). We have stated:

Certiorari lies to correct proceedings erroneous on the face

---

[1] We do not address the issue of Batts's juvenile status. Neither party disputes the fact that the prosecuting attorney intended to charge Batts as an adult with one or more felony counts.

of the record where there is no other adequate remedy, and it is available to the appellate court in its exercise of superintending control over a lower court that is proceeding illegally where no other mode of review has been provided. *Lupo* v. *Lineberger*, 313 Ark. 315, 855 S.W.2d 293 (1993). A demonstration of plain, manifest, clear, and gross abuse of discretion is essential before this court will grant a petition for writ of certiorari. *Shorey* v. *Thompson*, 295 Ark. 664, 750 S.W.2d 955 (1988).

*Foreman*, 317 Ark. at 148, 875 S.W.2d at 854. Based on these standards, a writ of certiorari appears to be the correct vehicle for the relief sought by the State.

■ On the merits of whether a writ of certiorari is warranted under these facts, we conclude that it is not for the same reasons that have already been discussed. Probable cause for detention had been found by the Sherwood Municipal Court, and the case had been bound over to circuit court. We have held that before the prosecutor files a proper charging instrument, the circuit court has no authority to proceed with the matter. *Whitehead* v. *State*, 316 Ark. 563, 873 S.W.2d 800 (1994). Here, however, the appropriate amount of bail following a probable-cause hearing for a felony arrest falls within the superintending power of the circuit courts over municipal courts. If a municipal court has the authority to set bail for arrested felons but no power to proceed with the resolution of felony matters, certainly the superintending circuit courts would have comparable authority. We hold, as a result, that the action of the circuit judge in reducing the bail amount was not erroneous on its face.

The State bases its contention that the circuit court was without authority to effect a change in the bail amount on two cases — *Gober* v. *Daniels*, 295 Ark. 199, 748 S.W.2d 29 (1988), and *Municipal Court of Huntsville* v. *Casoli*, 294 Ark. 37, 740 S.W.2d 614 (1987). In *Casoli*, the municipal court appealed after the circuit court entered a mandamus order directing the refund of an appearance bond to the defendant in a misdemeanor case. A $5,000 appearance bond was set in a third-offense DWI case (a misdemeanor, at that time), after Casoli had previously forfeited a $1,500 bond. The circuit court found that the $5,000 bond was excessive and ordered the municipal court to return the bond and "reinstate" the DWI charge. After reviewing the circuit court's superintending authority over munici-

pal courts, we held that the amount of bail rests in the sound discretion of the municipal court and that the circuit court was without authority to issue a writ of mandamus or prohibition to control that discretion.

Likewise in *Gober*, the defendant was convicted of DWI (a misdemeanor), and he appealed to the circuit court. The circuit court then entered an order of mandamus to the municipal court to reduce the bond by the amount of the fines which were suspended. Citing *Casoli*, we held again that the circuit court erred in issuing a writ of mandamus to control the discretion of the municipal court.

■ The *Gober* and *Casoli* cases, however, are distinguishable from the case at hand. First, in both earlier cases the circuit court directed the municipal court to reduce the bail. Here, the circuit court reduced the bail amount itself. Secondly, the municipal court in *Gober* and *Casoli* had jurisdiction to bring about convictions of the misdemeanor offenses, which would result in an appeal to the circuit court in the normal course of events. In the instant case, the municipal court had no authority to proceed with trying a felony offense and was limited to a determination of whether reasonable cause existed that Batts committed the offense and whether he should be detained pending further proceedings. *See* Ark. Const. art. 7, § 43; Ark. R. Crim. P. 4.1(e), 8.3(c). *See also* Ark. Code Ann. § 16-85-207 (1987); *Bailey v. State*, 284 Ark. 379, 682 S.W.2d 734 (1985).

■ What is most troublesome about Batts's situation is the judicial limbo into which he was cast for an extended period of time without a formal felony charge being lodged against him. The decision to file a felony information generally rests entirely in the prosecutor's discretion. *See Miller v. State*, 269 Ark. 341, 605 S.W.2d 430 (1980), *quoting Borkenkircher v. Hayes*, 434 U.S. 357 (1978). However, the deputy prosecutor offered no explanation at the September 17, 1996 hearing as to why no filing decision had been made by his office two months after Batts's arrest and detention. If no valid reason existed for the delay, a petition for writ of habeas corpus by Batts to the circuit court might well have been appropriate. *See* Ark. Code Ann. § 16-112-122 (1987). But regardless of the existence of an additional remedy, a two-month delay in filing charges without good reason is unacceptable.

Petition denied.

Glaze, J., dissents.

Tom Glaze, Justice, dissenting. To my knowledge, this court has never upheld a trial court's taking jurisdiction to hear a case when no complaint has been filed or action has been commenced. Here, the State repeatedly objected to the trial court taking jurisdiction in this case without something first having been filed with the court. To permit the trial court's actions and decision in this matter eviscerates the basic requirements of this court's rules of procedure. Therefore, I dissent.

This rather unusual case began on July 16, 1996, when David Batts allegedly was in a vehicle when he shot at another car and struck a postal truck. On the same date, Batts was arrested, and the municipal court held a reasonable cause hearing. Upon conclusion of the hearing, the municipal judge found Batts's charge involved a felony offense, the discharge of a firearm from a vehicle, Ark. Code Ann. § 5-74-107 (Repl. 1993). The judge then set Batts's bond at $50,000, but reduced it to $25,000 the next day. No further action is shown to have been requested or taken in the municipal court.

The next set of events began on September 16, 1996, when Batts's parents showed up at the Pulaski County Courthouse, and for some reason, went directly to Pulaski County Circuit Court Judge Marion H. Humphrey. In other words, the parents filed no pleadings in the clerk's office, and they had no attorney. Nonetheless, the parents asked Judge Humphrey to help them find some information concerning David Batts's case, and complained that their son should be in school, but instead was in jail. The judge accommodated the parents by contacting the prosecuting attorney's office and requesting that office to appear in his court the next day. The judge also asked the prosecutor's office to check to see if Batts had a prior record.

On September 17, 1996, Judge Humphrey, over the State's objection, conducted a hearing concerning Batts's case even though no complaint had been filed, and no attorney was present to represent Batts or the parents. The deputy prosecutor informed the court he could not, as yet, determine if Batts had a prior record, but related that Batts had given a statement, admitting to the July 16 shooting incident for which he was arrested. The deputy prosecutor further related his office had received the municipal court file on Batts on August 19, 1996, and while the State tries to file such

felony cases in circuit court within thirty days of a municipal court proceeding, it had not yet done so in the Batts case. The deputy prosecutor said that his office would likely charge Batts with the unlawful discharge of a firearm count and terroristic threatening, since Batts's shot had hit the postal truck when the truck was occupied.

Judge Humphrey voiced concern over Batts being only sixteen years old, his not being in school, and his sitting in jail when no charge had been filed in circuit court. The judge asked Batts's parents if they were able to make any kind of bond, and subsequently he reduced Batts's bond to $7,500. At the hearing's end, the deputy prosecutor again objected because nothing had ever been filed giving the trial court jurisdiction.

The State filed its original action in our court requesting this court issue a writ of prohibition vacating the circuit judge's order reducing Batts's bond. The State continues its objection, stating Batts had never filed a complaint with the circuit court, therefore, the circuit judge had no authority or jurisdiction to enter an order.

Rule 3 of this court's rules of civil procedure establishes that a civil action is commenced by filing a complaint with the clerk of the proper court who shall note thereon the date and precise time of filing. Upon filing of the complaint, the clerk issues a summons forthwith, and that summons is to be served on the defendant under ARCP Rule 4. If the defendant is not served within 120 days, the action is dismissed unless the time for service is extended. These fundamental rules were altogether ignored in this case. In sum, no action has ever been filed or summons served so as to commence this matter in Judge Humphrey's court. Therefore, the judge had no authority to conduct proceedings concerning Batts's case.

This court's willingness to permit the circuit court to ignore this court's rules of civil procedure has caused it to err in its review of the trial court's order. For example, the majority court states the Pulaski County Circuit Court does not wholly lack subject-matter jurisdiction, yet this court's settled rule is that jurisdiction is tested on the pleadings. *Springdale Sch. Dist. v. Jameson, Judge*, 274 Ark. 78, 621 S.W.2d 860 (1981). In the present case, no pleadings have been filed, so how is this appellate court to decide the jurisdictional issue? If pleadings had been filed below, the parties would have been

required to establish the factual and legal issues regarding the municipal court's and circuit court's jurisdiction involving reasonable cause hearings and bond issues. The State was never afforded the opportunity to respond to Batts's complaint because none was filed.

Batts's counsel on appeal complains the State should have filed its charges earlier in circuit court, but if that was Batts's complaint, he could have properly filed a complaint asking a writ of mandamus issue against the State compelling it to exercise its discretion and file charges against Batts. Or, Batts could have requested the municipal court to give him another reduction, since that court willingly gave him one earlier.

At the very least, Batts was required to file his complaint, setting out his allegations and grievances, in the circuit court clerk's office, so the clerk could properly assign the case to a circuit judge for immediate action, if requested. By its decision today, this court authorizes a procedure which allows parties to circumvent our court rules and permits them to select a judge they think might afford them relief. Such forum shopping should be forbidden by this court, not encouraged.